IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

BEAUFORT DIVISION

| | | |
|---|---|---|
| Altony Brooks, | ) | CIVIL ACTION NO. 9:15-3195-PMD-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Sgt. Davenport, Ofc. Ledwell, | ) | |
| Warden Stevenson, Warden Sutton, | ) | |
| Captain Pack and Lieutenant Carter | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S. § 1983. Plaintiff, an inmate with the South Carolina Department of Corrections (SCDC), alleges violations of his constitutional rights by the named Defendants.

The Defendants filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on April 18, 2016. As the Plaintiff is proceeding pro se, a Roseboro order was entered by the Court on April 19, 2016, advising Plaintiff of the importance of a dispositive motion and of the need for him to file an adequate response. Plaintiff was specifically advised that if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case. Plaintiff thereafter filed a response in opposition to the Defendants' motion June 9, 2016, to which the Defendants filed a reply memorandum on June 20, 2016, to which Plaintiff filed a sur reply on June 30, 2016.





The Defendants' motion is now before the Court for disposition.[1]

## Background and Evidence

Plaintiff alleges in his verified Complaint[2] that on November 18, 2012, while he was incarcerated at the Broad River Correctional Institution (BRCI),[3] he was "sprayed" with chemical munitions by the Defendant Officer Ledwell. Plaintiff alleges that Ledwell did not thereafter write a report on the incident, and that out of retaliation Plaintiff was placed on "nutraloaf" for three days, although he was "never given a copy of the nutraloaf form".

Plaintiff alleges that his water was "cut off" on November 19, 2012 and that his eyes "burned for days" . Plaintiff alleges that he was "not given soap or anything that will decrease the burning sensation of the chemical munitions and was not treated with decontamination solutions to clean his eyes as he was denied medical treatment". Although Plaintiff concedes he was allowed to shower, he alleges that the shower he was given "only heightened the burning sensation" and that he suffered for "7 days" due to the burning.

Plaintiff alleges that Ledwell told officials that he [Plaintiff] had "held on the food flap", but Plaintiff alleges that he was "assaulted for no apparent reason". Plaintiff also alleges that he was "denied the right to speak to higher authority to show that the nutraloaf had dark spots and

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C. The Defendants have filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se litigants are considered as affidavits with respect to any factual allegations contained therein that are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

[3]Plaintiff is currently incarcerated at the Lee Correctional Institution (LCI).





smelled like urine". However, Plaintiff does state that he spoke to the Defendant Davenport (a Sergeant), who indicated that he [Davenport] was "coming around" and that Plaintiff should have been patient so that he could speak to Davenport. Plaintiff alleges that he informed "officials" (presumably Davenport) that Ledwell had retaliated against him due to his filing grievances and that he had been placed on Nutraloaf for no apparent reason. Plaintiff alleges that he did not eat the Nutraloaf because of the condition it was in.

Plaintiff alleges that he filed a grievance on November 20, 2012, and on August 8, 2013 received a response stating that he had "failed to participate in the grievance process". Plaintiff alleges by that time he had been transferred to the Lee Correctional Institution.

Plaintiff alleges that the Defendants' conduct has denied him his constitutional rights, and that the Defendants Ledwell and Davenport also failed to follow SCDC rules and policies concerning excessive use of force. Plaintiff alleges that the Defendants Stevenson, Sutton, Pack and Carter should be held liable because they "did not train and supervise Defendants Ledwell and Davenport adequately and failed to protect Plaintiff's rights . . . .". Plaintiff further alleges that these Defendants failed to answer his Request to Staff or advise Plaintiff why he was placed on Nutraloaf, was "gassed", and was "denied medical treatment to decontaminate his eyes". Plaintiff alleges he was also not advised why his water was cut off.

In addition to his constitutional claim, Plaintiff asserts state law claims against the Defendant Ledwell for assault and battery, against the Defendants Ledwell and Davenport for negligence, as well as state law claims against all of the named Defendants for "respondeat superior"





and "corporal punishment".[4] Plaintiff seeks monetary damages. See generally, Plaintiff's Verified Complaint, with attached Exhibit [Step 1 Grievance].

In support of summary judgment in the case, the Defendants have submitted an affidavit from Michael Tindal who attests that he is an Inmate Grievance Administrator with the Inmate Grievance Branch of the SCDC, and that in this capacity he is familiar with the Plaintiff's grievance history. Tindal attests that Plaintiff filed a Step 1 Grievance (Grievance No. BRCI-1499-12), which addresses the issues set forth in Plaintiff's Complaint. This grievance was dated November 20, 2012, but was not received by the Inmate Grievance Branch until December 19, 2012, all as is shown on the Step 1 Grievance (attached to Tindal's affidavit as an exhibit).[5] Tindal attests that this Step 1 Grievance was returned to the Plaintiff unprocessed on May 20, 2013, because Plaintiff failed to participate in the grievance process. Tindal further attests that a review of Plaintiff's grievance history reveals that this grievance was the only grievance filed by the Plaintiff with respect to the incident(s) at issue.

Tindal has also attached to his affidavit a copy of the SCDC Offender Management System Inmate Grievance Application print out with respect to this grievance, which includes the notation that Plaintiff "refused to participate in grievance process when IGA attempted to discuss". See generally, Tindal Affidavit, with attached Exhibits.

The Defendant Sheldon Ledwell has also submitted an affidavit wherein he attests that he is a correctional officer with the SCDC, and was assigned to BRI in November 2012.

---

[4]In addition to citing to the named Defendants with respect to these claims, Plaintiff also references the names of other individuals who are not named Defendants in this case.

[5]This is the same Step 1 Grievance Plaintiff attached as an exhibit to his Complaint.





Ledwell attests that on November 17, 2012, Plaintiff became disruptive and obstructed his food service flap by placing his right arm through the flap and refusing to move it. Ledwell attests that he gave the Plaintiff several directives to move his arm so that the food service flap could be secured, but that Plaintiff "refused all of my verbal directives". Ledwell attests that Plaintiff was housed in the Special Management Unit (SMU) at BRI at the time of this incident, and that it is important to secure the food service flaps in all cells, especially including the SMU, for reasons of officer safety, and that in response to Plaintiff's repeated refusals of his verbal commands to remove his [Plaintiff's] arm from the food service flap, he [Ledwell] "administered a short blast of chemical munitions and was assisted in removing [Plaintiff's] arm from the flap by Officer D. Johnson without further incident".

Ledwell attests that "[a]ll force that was directed toward [Plaintiff] was applied in a good faith effort to maintain or restore discipline, and was in direct response to [Plaintiff's] refusal to obey a direct order to remove his arm from the food service flap so that could be secured". Ledwell attests that he "tempered the severity of [his] forceful response by utilizing only the amount of force necessary to ensure [Plaintiff] complied with [his] directives so that the food service flap could be secured", and that following this incident Plaintiff had running water in his sink that he could use to wash his face. See generally, Ledwell Affidavit.

In response to the Defendants' evidence, Plaintiff filed an brief in opposition (formatted as an affidavit) in which he makes various points and arguments. Plaintiff concedes that the incident actually occurred on November 17, 2012, as represented in the Defendants' records, not November 18, 2012. Plaintiff also states that his water was cut off on November 19, 2012, which would have been two days after the incident and that he had a shower the following day, but states





that he was "denied clean clothing during this period . . . .". Plaintiff also does not appear to contest that any injuries he may have suffered or received were minor, but argues that deminimus injuries can still give rise to an excessive force claim. Plaintiff confirms that he does not allege that Davenport was involved in the use of chemical munitions, but again states that he "denied medical attention", and that he was "not provided with a copy of paperwork related to Plaintiff being placed on Nutraloaf". Plaintiff states that the Defendants Stevenson, Sutton, Pack and Carter "failed to inquire as to why Plaintiff was gassed with chemical munitions and failed to inquire as to why Plaintiff was not given medical treatment to decontaminate his eyes". Plaintiff also notes that in his state law claims he mentioned individuals named "Cox" and "Johnson", but apparently concedes that he has not included these individuals as party Defendants in this lawsuit and is not making any claims against them. Plaintiff then makes legal arguments for why his claims should not be dismissed.

Specifically with respect to his grievance, Plaintiff does not appear to dispute that the grievance branch did not receive this grievance until December 2012, but does note a discrepancy in the handwritten "date received" of "12/19/12" with the date that the grievance was time stamped as having been received in the office of December 10, 2012. Plaintiff states that he did not receive the response to this grievance "after the days of the time span of SCDC policy", arguing that the time for filing from a Step 1 grievance to a Step 2 grievance is thirty to forty-five days, while the processing of his grievance exceeded one hundred fifty days. Therefore, Plaintiff complains that the Defendants "failed to follow their own policies", and that he should therefore be deemed to have completed the grievance process, citing to case law from this District stating that an inmate may go ahead and file a complaint where a grievance has not been responded to after one hundred fourteen





(114) days from the filing of a Step 1 written grievance.

In separate documents attached to his response, Plaintiff makes such statements as "Ledwell urinated on Plaintiff's Nutraloaf", that Ledwell told Plaintiff when he "sprayed" him that he "better stop filing grievances", and that when he had a shower he did not having any cleaning materials (soap, etc.) with him. Plaintiff also disputes that he "refused several directives to move his arm so that the food flap could be secured". Elsewhere, Plaintiff states that Officer Johnson "was present when Ledwell sprayed Plaintiff with the chemical munitions",[6] and that after this incident had occurred Davenport "was aware that Plaintiff was sprayed with chemical munitions and did not call medical or provide with medical assistance and a shower . . . .". See generally, Plaintiff Response (Affidavit), with attachments.

As an attachment to their reply memorandum, Defendants have provided an affidavit from Teri Hiott, who attests that she is custodian of inmate medical records at the SCDC, and is familiar with the Plaintiff's medical history. Hiott attests that Plaintiff's medical history shows that on December 10, 2012 an entry was input regarding an incident that had occurred on November 17, 2012 at BRI. Hiott attests that according to the entry for November 17, 2012, security had reported that Plaintiff had been sprayed with chemical munitions, and that following this incident Plaintiff was noted to be stable, in no acute distress, that he voiced no complaints, that he was alert and oriented X3, verbal, that no injuries were noted, that Plaintiff was ambulating in his cell without difficulty, and that no respiratory distress was noted. See generally, Hiott Affidavit, with attached Exhibit (SCDC Health Services Medical Summary).

[6]This individual is not named as a Defendant in this case.





In his sur reply, Plaintiff notes that the Medical Summary report shows the entry for 12/10/12 being a "late" entry for November 17, 2012, and denies that he ever saw a nurse or that he was ever provided with any medical assistance. See Plaintiff's Sur Reply.

**Discussion**

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990).

Here, after careful review and consideration of the arguments and evidence submitted in this case, the undersigned finds for the reasons set forth hereinbelow that the Defendants are entitled to summary judgment in this case.





I.

**(Federal Claims)**

Pursuant to 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this Title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Through the enactment of this statute, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741 (2001); see Porter v. Nussle, 534 U.S. 516 (2002); Larkin v. Galloway, 266 F.3d 718 (7th Cir. 2001) [exhaustion required even though plaintiff claimed he was afraid]; see also Claybrooks v. Newsome, No. 00-7079, 2001 WL 1089548 (4th Cir. Sept. 18, 2001) (unpublished opinion) [applying Booth v. Churner to affirm district court's denial of relief to plaintiff]. Accordingly, before Plaintiff may proceed on his claims in this Court, he must first have exhausted the administrative remedies that were available to him at the prison.

This Court can take judicial notice from multiple previous cases filed in this Court that, under the SCDC grievance procedure, in order to exhaust a conditions of confinement claim within the SCDC, the inmate must submit a Step 1 grievance form setting out his complaint to the warden within fifteen days of the alleged incident, and that if the inmate is unsuccessful at the Step 1 level, they must then appeal by filing a Step 2 appeal. Only after an inmate has received a response to his Step 2 appeal is his claim deemed exhausted. See Aloe Creme Laboratories, Inc. v. Francine Co., 425 F.2d 1295, 1296 (5th Cir. 1970)[a federal court may take judicial notice of the contents of its own records]; see also Branton v. Ozmint, No 08-2306, 2009 WL 1457144, at * 2 (D.S.C. May 22, 2009); Jones v. Kay, No. 07-3480, 2007 WL 4292416, at * 5 (D.S.C. Dec. 5, 2007); Jenkins v.





South Carolina Dept. of Corrections, No. 05-2800, 2006 WL 1083563, at * 5 (D.S.C. Apr. 18, 2006).

The Defendants have the burden of showing that Plaintiff failed to exhaust his administrative remedies. See Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 683 (4th Cir. 2005) [inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled and proven by the Defendant]; Jones v. Bock, 549 U.S. 199 (2007). To meet this burden, the Defendants have submitted the sworn affidavit from Michael Tindal as well as exhibits setting forth Plaintiff's grievance history to show that Plaintiff failed to exhaust his administrative remedies with respect to the claims asserted in this lawsuit prior to filing this lawsuit. Specifically, the evidence reflects that Plaintiff filed a Step 1 grievance relating to this matter in December 2012 that was in turn returned to him on May 20, 2013 bearing the notation "Administratively Closed due to [Plaintiff's] failure to participate in the Grievance process". The SCDC Offender Management System computer print out also reflects that Plaintiff "refused to participate in grievance process while IGA attempted to discuss". There is no dispute in the evidence and other filings before this Court that Plaintiff never filed a Step 2 appeal of the dismissal of his Step 1 grievance.

While Plaintiff correctly notes that summary judgment on the issue of exhaustion should be denied where there is a genuine issue of fact as to whether or not an inmate exhausted his administrative remedies or was prevented from doing so by prison officials, there is no genuine issue of fact presented in this case. Plaintiff does not dispute that he filed the Step 1 grievance presented as an exhibit in this case (indeed, he submitted his own copy as an exhibit), nor has he disputed that he never filed or attempted a Step 2 appeal of the denial of his Step 1 grievance. See generally, Jordan v. Miami-Dade County, 439 F.Supp.2d 1237, 1241-1242 (S.D.Fla. 2006)[Remedies not exhausted where inmate did not appeal denial]; cf. Sullivan v. Coleman, No. 06-1588, 2006 WL





3759757, * 6 (D.S.C. Dec. 18, 2006)[Finding that inmate abandoned grievance where he failed to properly complete and return Step 2 Inmate Grievance Form]; Williams v. Reynolds, No. 12-138, 2013 WL 4522574 at * 4 (D.S.C. Aug. 27, 2013) [Noting that "even if Plaintiff did file a Step 1 grievance there is no evidence that Plaintiff filed a Step 2 grievance or otherwise appealed the decision not to process the Step 1 grievance."]. Rather, Plaintiff's argument is that he should be allowed to proceed with this lawsuit because he did not receive a final response to his Step 1 grievance within 114 days, and that if an inmate does not receive a final response through the Step 2 process within 114 days, the SCDC grievance process can be deemed exhausted for purposes of allowing an inmate to proceed with a lawsuit in federal court. See Boyd v. Corrections Corp. of America, 380 F.3d 989, 996 (6th Cir. 2004) [ administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance], cert. denied, 544 U.S. 920 (2005); cf. Jones v. Kay, 2007 WL 4292416, at * 5; see also Hardin v. South Carolina Dept. of Corrections, No. 07-0009, 2007 WL 675632, at * 3 (D.S.C. Feb. 28, 2007).

However, while Plaintiff would have had an argument for being allowed to file this lawsuit *if* he had done so after he failed to receive a response to his Step 1 grievance prior to the expiration of this 114 day time period, it is clear in the evidence (and indeed in Plaintiff's own exhibits and arguments) that that is not what he did. Rather, he waited until he received the response to his Step 1 grievance, then, instead of appealing the decision on his Step 1 grievance by filing a Step 2 appeal, he waited over two (2) years and then filed this lawsuit. Plaintiff cannot receive a response to his Step 1 grievance, fail to pursue a Step 2 grievance appeal of the denial of that Step 1 grievance, and then come into this Court two (2) years later claiming a right to proceed anyway because he did not timely receive a response to his Step 1 grievance. Cf. Kearse v. Patterson, No.





12-1704, 2013 WL 4511637, at * 3 (D.S.C. Aug. 22, 2013) [Claim subject to dismissal for failure to exhaust where Plaintiff received response to his Step 1 grievance after the expiration of the 114 day time period and then filed a lawsuit without attempting a Step 2 appeal]. While Plaintiff cites to several cases to support his argument that an inmate is allowed to file a lawsuit in federal court after he has failed to receive a response to his grievance within the time period required, in every one of those cases where the lawsuit was allowed to proceed, it was because no response had *ever* been received by the inmate prior to the filing of the lawsuit. That is not the case here. Rather, Plaintiff did receive a response to his Step 1 grievance a little over a month after the expiration of the normal period for completion of the grievance process.[7] Cf. Sandsbury, 2007 WL 858860, at * 3, [Noting that where the "plaintiff *never* receives a response from the Warden or that responsible official to his Step 1 grievance, after approximately one hundred fourteen days have passed, Plaintiff will [be deemed to] have exhausted such administrative remedies as are available"], (emphasis added) (internal quotations omitted).

If Plaintiff was going to pursue relief in federal court on the basis that the prison had failed to process his grievance within 114 days, he should have pursued that avenue for relief at that time. However, he did not do so. Instead, he waited until he received a response to his Step 1 grievance, then failed to properly perfect and exhaust a Step 2 appeal.[8] Cf. Kearse, 2013 WL

---

[7]Notably, "[t]he full time period may be longer [than 114 days] if a response is received from the Warden and a Step 2 is required". Sandsbury v. Ozmint, No. 07-383, 2007 WL 858860, at * 3, n. 2 (D.S.C. March 19, 2007).

[8]It is further noted that the Defendants' (as well as the Plaintiff's) evidence reflects that the reason Plaintiff's Step 1 grievance was denied and administratively closed was because Plaintiff himself refused to cooperate in the investigation of his Complaint. Additionally, while Plaintiff may have believed that any further appeal of this decision would have been futile at that point, that does (continued...)





4511637, at * 3 [Claim subject to dismissal for failure to exhaust where Plaintiff received response to his Step 1 grievance after the expiration of the 114 day time period and then failed to perfect a Step 2 appeal]; Blakely v. Tatarsky, No. 08-3609, 2009 WL 2922987 at * 5 (D.S.C. Sept. 1, 2009)["It appears, however, that the plaintiff did nothing after the grievance(s) were returned as either unprocessed or denied. . . . Whether or not the plaintiff now has some legitimate argument as to why his grievances should have been processed is immaterial. He did not proffer that same argument to the defendants, as far as the Court has been informed. It cannot be said, in this case, that administrative remedies were simply unavailable to him."]; Jordan, 439 F.Supp.2d at 1241-1242[Remedies not exhausted where inmate did not appeal denial]; Sullivan, 2006 WL 3759757, * 6 [Finding that inmate abandoned grievance where he failed to properly complete and return Step 2 Inmate Grievance Form].

Hence, there is no genuine issue of fact as to whether Plaintiff failed to exhaust his grievance remedies in this case, and allowing a prisoner to bring an inmate lawsuit without fully exhausting his administrative remedies prevents prison officials from having the opportunity to address the prisoner's complaints through the administrative process, thereby undermining Congress' directive that prisoners are required to do so prior to filing a complaint in federal court. Neal v. Goord, 267 F.3d 116, 123 (2nd Cir. 2001); see also Cox, 2010 WL 1286837, at * 7 ["[T]here is no futility exception to [the] exhaustion requirement"]. Therefore, while Plaintiff could have

[8](...continued)
not excuse his failure to complete his grievance review through the appeal process. Brown v. Strickland, No. 15-1251, 2016 WL 4168604 at * 2 (D.S.C. Aug. 8, 2016) (quoting Massay v. Helman, 196 F.3d 727, 733 (7th Cir. 1999) ["[T]here is no futility exception to the PLRA's exhaustion requirement"]; Cox v. Grayer, No. 08-1622, 2010 WL 1286837, at * 7 (N.D.Ga. March 29, 2010)[["[T]here is no futility exception to [the] exhaustion requirement"].





conceivably filed this lawsuit when he had not received a response to his Step 1 grievance after 114 days; but see Sandsbury, 2007 WL 858860, at * 3, n 2; since he did not and instead waited until he received a response to his Step 1 grievance and thereafter failed to file a Step 2 appeal, he cannot now (years later) come into federal court seeking relief on these claims. Kearse, 2013 WL 4511637, at * 3 [Claim subject to dismissal for failure to exhaust where Plaintiff received response to his Step 1 grievance after the expiration of the 114 day time period and then failed to perfect a Step 2 appeal before filing a lawsuit]; Wright v. Turbide, No. 14-2219, 2015 WL 3545362 at ** 1, 3-4 (D.S.C. June 8, 2015)[Finding Defendant met its burden of demonstrating Plaintiff's failure to exhaust where Plaintiff received a response to his Step One grievance approximately 10 months after it was filed, and rather than filing the required Step Two grievance form, he waited another 15 months and then filed a court case].

Therefore, this case is subject to dismissal for failure of the Plaintiff to exhaust his administrative remedies. Williams v. Reynolds, No. 12-138, 2013 WL 4522574 at * 4 (D.S.C. Aug. 27, 2013) [Noting that "even if Plaintiff did file a Step 1 grievance there is no evidence that Plaintiff filed a Step 2 grievance or otherwise appealed the decision not to process the Step 1 grievance."]; see also Spruill v Gillis, 372 F.3d 218, 227-232 (3d Cir. 2004) [Discussing necessity of pursuing all administrative remedies to the end]; Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000)["It is beyond the power of this court - or any other to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis."](quoting Beeson v. Fishkill Corr. Facility, 28 F.Supp. 2d 884, 894-895 (S.D.N.Y. 1998)); Cannon v. Washington, 418 F.3d 714, 719 (7th Cir. 2005) [Prisoner may not file a lawsuit before exhausting his administrative remedies]; Malik v. Sligh, No. 11-1064, 2012 WL 3834850, at * 4 (D.S.C. Sept. 4, 2012) ["A court may not consider,





and must dismiss, unexhausted claims"]; Porter, 534 U.S. at 516 [exhaustion required for all actions brought with respect to prison conditions]; cf. Nally v. King, No. 12-128, 2013 WL 594709, at * 3 (N.D.W.Va. Jan. 3, 2013) ["Failure to receive a response is not an excuse for not moving to the next level of the grievance procedure"]; adopted by 2013 WL 593448 (N.D.W.Va. Feb. 15, 2013).

**II.**

**(State Law Claims)**

As noted, Plaintiff also purports to assert several state law causes of action in his Complaint. However, if the Court dismisses Plaintiff's federal claims, these pendant state law claims should all also be dismissed under United Mine Workers v. Gibbs, 383 U.S. 715 (1966), and its progeny. See In Re Conklin, 946 F.2d 306, 324 (4th Cir. 1991); Nicol v. Imagematrix, Inc., 767 F.Supp. 744, 746, 749 (E.D.Va. 1991); Mills v. Leath, 709 F.Supp. 671, 675-676 (D.S.C. 1988); Carnegie-Melon v. Cohill, 484 U.S. 343 (1988); Taylor v. Waters, 81 F.3d 429, 437 (4th Cir. 1996).

Gibbs provides that where federal claims in a lawsuit originally filed in a United States District Court are dismissed, leaving only state law causes of action, dismissal of the remaining state law claims without prejudice is appropriate in order to allow the Plaintiff to pursue and obtain a ruling as to the viability of his or her state law claims in a more appropriate forum. See generally, Gibbs, 383 U.S. at 726 ["Certainly, if the federal claims are dismissed before trial, ... the state claims should be dismissed as well"]; Carnegie–Mellon, 484 U.S. at 350, n. 7 ["[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine ... will point toward declining to exercise





jurisdiction over the remaining state law claims."].[9] Further, if Plaintiff's state law claims were to survive the Defendants' motion for summary judgment, it would be much more appropriate for those claims to be tried by the state courts. See Lovern v. Edwards, 190 F.3d 648, 655 (4th Cir. 1999) ["[T]he Constitution does not contemplate the federal judiciary deciding issues of state law among non-diverse litigants"].

Finally, dismissal of Plaintiff's state law claims would also not prejudice the Plaintiff, as federal law provides for tolling of statutes of limitation for state claims during the period they were pending in federal court and for thirty days afterwards. See 28 U.S.C. § 1367(d); Jinks v. Richland County, 538 U.S. 456 (2003); Hedges v. Musco, 204 F.3d 109, 123–124 (3rd Cir. 2000); Beck v. Prupis, 162 F.3d 1090, 1099–1100 (11th Cir.1998) ["a dismissal under section 1367 tolls the statute of limitations on the dismissed claims for 30 days"]. Therefore, Plaintiff would be able to refile his state claims in state court, if he chooses to do so, assuming of course that they were timely asserted initially through the filing of this action.

**Conclusion**

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**.

Plaintiff's federal claims should be **dismissed**, without prejudice, for failure of the Plaintiff to exhaust his administrative remedies prior to filing this lawsuit. Hyde v. South Carolina Dep't of Mental Health, 442 S.E.2d 582, 583 (1994) ["Where an adequate administrative remedy is

[9]Plaintiff could, of course, maintain his state claims in this court if there was diversity jurisdiction in this case. See 28 U.S.C. § 1332(a). However, all of the parties are alleged to be South Carolina residents. See Court Docket Nos. 1, p. 2; 14-2, p. 1. Therefore, diversity jurisdiction is not available.





available to determine a question of fact, one must pursue the administrative remedy or be precluded from seeking relief in the courts"]. Plaintiff's remaining state law claims should then also be **dismissed**, without prejudice, so as to allow Plaintiff to pursue these claims in state court, if he chooses to do so. See generally, Gibbs, 383 U.S. at 726 ["Certainly, if the federal claims are dismissed before trial, ... the state claims should be dismissed as well"].

The parties are referred to the Notice Page attached hereto.

Bristow Marchant
United States Magistrate Judge

August 15, 2016
Charleston, South Carolina





**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).



